1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAMES M. STEVENS,                      No.  2:17-CV-2496-DMC

12            Plaintiff,
                                            MEMORANDUM OPINION AND ORDER
13        v.

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
              Defendant.
16

17

18            Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pursuant to the written consent of all parties (Docs. 8 and 9), this case is before the undersigned

21   as the presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c).

22   Pending before the court are the parties' brief on the merits (Docs. 12 and 22).

23            The court reviews the Commissioner's final decision to determine whether it is:

24   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

25   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

26   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

27   (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

28   a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

1    including both the evidence that supports and detracts from the Commissioner's conclusion, must

2    be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

3    v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

4    decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

5    Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

6    findings, or if there is conflicting evidence supporting a particular finding, the finding of the

7    Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

8    Therefore, where the evidence is susceptible to more than one rational interpretation, one of

9    which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

10   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

11   standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

12   Cir. 1988).

13           For the reasons discussed below, the matter will be remanded for further

14   proceedings.

15

16                              **I.  THE DISABILITY EVALUATION PROCESS**

17           To achieve uniformity of decisions, the Commissioner employs a five-step

18   sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§

19   404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

20               Step 1          Determination whether the claimant is engaged in
                                 substantial gainful activity; if so, the claimant is presumed
21                               not disabled and the claim is denied;

22               Step 2          If the claimant is not engaged in substantial gainful activity,
                                 determination whether the claimant has a severe
23                               impairment; if not, the claimant is presumed not disabled
                                 and the claim is denied;
24
                 Step 3          If the claimant has one or more severe impairments,
25                               determination whether any such severe impairment meets
                                 or medically equals an impairment listed in the regulations;
26                               if the claimant has such an impairment, the claimant is
                                 presumed disabled and the claim is granted;
27

28   / / /

                                                2

Step 4      If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

Step 5      If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II.  THE COMMISSIONER'S FINDINGS

2          Plaintiff applied for social security benefits on September 8, 2014.  See CAR 15.[1]

3    In the application, plaintiff claims disability began on September 1, 2012.  See id.  In his opening

4    brief, plaintiff offers the following statement of the case:

5             Joseph Stevens was born April 25, 1962. He completed the 10th
             grade (AR 180) and worked continuously working unskilled physical
6            labor jobs; construction, property maintenance, laying sod lawns, and
             delivering car parts (AR 36). In 2012 he married Karen Stevens and the
7            couple moved to California at the end of 2012. Early in 2013 Stevens
             began to have difficulty breathing. He was evaluated at the end of 2012.
8            Stevens was admitted into Emergency September 2013(AR 184). Kaiser
             tested Stevens and the x-rays found Stevens with chronic obstructive
9            pulmonary disease, an obstruction in his lower lung (AR 362).
                  In 2013 Kaiser's Pulmonary team prepared to operate on Stevens
10           to remove the obstruction in his lower lung (AR 394). The operation in
             2014 was unsuccessful (AR 775) (AR 804). Stevens had an adverse
11           reaction to the medications needed to treat him. He gained significant
             weight. He became severely depressed. Stevens applied for social security
12           disability in September of 2014 (AR 156). His date of last insured was
             December 2014.
13

14           Plaintiff's claim was initially denied.  Following denial of reconsideration,

15    plaintiff requested an administrative hearing, which was held on January 3, 2017, before

16    Administrative Law Judge (ALJ) Daniel Myers.  In a March 27, 2017, decision, the ALJ

17    concluded plaintiff is not disabled through the date last insured (DLI)[2] based on the following

18    relevant findings:

19           1.    Through the date last insured, the claimant had the following
                   severe impairment(s): mild COPD, sarcoidosis status post partial
20                 lobectomy of the left lung, cervical spine disorder, and joint
                   dysfunction;
21
22           2.    Through the date last insured, the claimant did not have an
                   impairment or combination of impairments that met or medically
23                 equaled an impairment listed in the regulations;

24           3.    Through the date last insured, the claimant had the following
                   residual functional capacity: light work; the clamant could
25                 occasionally stoop, kneel, crouch, crawl, and climb stairs; he
                   needed to avoid hazards such as unprotected heights and moving
26                 machinery; he needed to avoid fumes, and pulmonary irritants;

---

27    [1]     Citations are the to the Certified Administrative Record (CAR) lodged on April 19,
      2018 (Doc. 11).
      [2]     Plaintiff last met the insured status requirements under the Social Security Act on
28    December 31, 2014.  See CAR 17.

| | |
|---|---|
| 1 | 4.     Considering the claimant's age, education, work experience, residual functional capacity through the date last insured, and vocational expert testimony, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. |
| 2 | |
| 3 | |

See id. at 17-26.

After the Appeals Council declined review on October 20, 2017, this appeal followed.

## III. DISCUSSION

In his opening brief, plaintiff argues: (1) the ALJ failed to comply with Social Security Ruling 83-20 and obtain medical opinion evidence to determine the precise onset date; (2) the ALJ failed to give adequate weight to the medical opinions of treating physician, Dr. Shah, and examining physician, Dr. Fernando; (3) the ALJ failed to provide adequate reasons for rejecting plaintiff's statements and testimony as not credible; (4) the ALJ erred by failing to address lay witness evidence provided by plaintiff's wife, Karen Stevens; (5) the ALJ failed to consider plaintiff's mental impairments or obesity; and (6) the ALJ's vocational finding is flawed because plaintiff is unable to perform any of the jobs identified by the vocational expert.

**A.**     **Determination of Onset Date**

Citing Diedrich v. Berryhill, 874 F.3d 634 (9th Cir. 2017), plaintiff argues the ALJ violated Social Security Ruling (SSR) 83-20, which requires the ALJ to appoint a medical advisor to establish a claimant's disability onset date when there is a meaningful gap in the medical records, or when the record, though complete, is ambiguous as to the onset date.[3] According to plaintiff, both conditions are met in this case. Plaintiff argues:

> Here the ALJ states Stevens did not have a mental impairment during the date of last insured.(AR 17). The ALJ states "Dr. Brode determined there was insufficient evidence to make a determination as to the date of last insured. (AR 18). Consultive [sic] Examiner Dr. Lacy states Stevens had been depressed for the previous four years throughout the period insured (DLI) (AR 816). The ALJ discounts examining consultant Dr. Lacy's evaluation (AR 18). As such the ALJ finds there was insufficient medical evidence to establish a medically determinable

---

[3]     Social Security Ruling 83-20 was rescinded and replaced by Social Security Rulings 18-1p and 18-2p, effective October 2, 2018. See SSR 18-1p, 18-2p.

mental impairment through the date of last insured. Therefore there is a meaningful gap in the record which requires a medical expert. Thus (A) is met.

* * *

Here the ALJ uses non-examining State agency medical consultant, Dr. Jone's determination to support his finding as to Stevens' physical impairment. Dr. Jone states there is insufficient medical evidence to establish a physical disability through the date of last insured (AR 22). The ALJ discredits Examining Consultant Dr. Fernando who determines Stevens can only walk less than two hours a day without or with frequent breaks (AR 22) (AR 768). The ALJ relies on the disability determination evaluator Dr. Bayar (AR 23). Dr. Bayar states as the 2014 pulmonary records finds Stevens can walk 320 meters [349 yards] without supplemental oxygen in 6 minutes, Stevens can perform medium work. (AR 23). In 2013- 2014 when Stevens is well within the insured period Pulmonologist Dr. Shah states Steven is unable to walk 20 yards with a five-gallon bottle of water on him. Dr. Bellucci states Stevens could walk less than 100 yards (AR 874). The ALJ did not address whether being able to walk 349 yards establishes Stevens is able to stand or walk for six hours a day (light work). As such, because there is ambiguous medical testing which Dr. Bayar states does not show a disability but both Pulmonologists make the opposite determination,

the ALJ was required to obtain a medical expert to determine whether Stevens was disabled before his date of last insured. Therefore (B) is met.

At the outset, the court does not agree with plaintiff's statement of the law. In Dietrich, the Ninth Circuit Court of Appeals held SSR 83-20 requires the ALJ to call a medical expert to determine the onset date of disability "where the record is lacking and ambiguous as to the onset date. . . ." See Dietrich, 874 F.3d at 638 (emphasis added). The test is not, as plaintiff suggests, met if only one condition exists.

In any event, plaintiff has not indicated how the disability onset date is at issue, let alone ambiguous, because the ALJ found plaintiff was not disabled at any time since the date he alleged he became disabled through the date last insured. See CAR 26. The ALJ accepted the date plaintiff alleges he became disabled and, thus, there is no ambiguity in this regard. Plaintiff does not explain how his examples showing different opinions with respect to limitations on walking suggest any ambiguity with respect to the onset date. Similarly, plaintiff does not indicate how the ALJ's finding there is insufficient evidence to establish a medically determinable mental impairment bears on the onset date.

6

## B.    Evaluation of Medical Opinions

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the

opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

According to plaintiff:

The ALJ states Dr. Shah states Stevens can perform light work. However light work outside the social security realm does not mean standing six to eight hours a day lifting up to 10 pounds frequently. The ALJ relies upon Dr. Bayar's findings. Dr. Bayar has never examined Stevens. He is a non-treating consulting doctor. The ALJ disregards Dr. Fernando who found Stevens limited to sedentary work although Dr. Fernando examined Stevens. As such, the ALJ did not give proper weight

8

to Stevens' treating doctors and gave more weight to the opinions of a doctor who do (sic) never examined or treated Stevens. (in opposition to the Federal Regulations as delineation in *Revels v. Berryhill,* (9th Cir 2017), *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995).) As such, Stevens' treating doctors find him limited to sedentary non-exertional activity with the ability to rest. Therefore the ALJ's findings are not supported by substantial evidence.

1. <u>Dr. Shah</u>

As to Dr. Shah, the ALJ stated:

> On June 18, 2013, Dr. Archan M. Shah, noted that the claimant was restricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature (e.g., light housework, office work). The claimant was not taking any medication. His record showed that he had no known allergies. His PET scan showed faint uptake 1.1 and 1.4 in the 2 LLL nodules. The probability of malignancy was about 12% (Exhibits 1F/39-51, 2F/12).

> * * *

> As for the opinion evidence, I give great evidentiary weight to the opinion of the claimant's long-term treating physician, Dr. Shah (Exhibit 1F/39). His opinion is consistent with and supported by the medical evidence that the claimant could still work through the DLI [date last insured].

CAR 21, 24.

Plaintiff argues the ALJ erred by accepting Dr. Shah's opinion plaintiff could perform light work because "light work" means something else "outside the social security realm." Plaintiff's argument is puzzling given he has asked this court to reverse the final decision of the Commissioner of Social Security pursuant to authority granted by the Social Security Act. The case is squarely in the realm of social security. The court finds no error in the ALJ's reliance on Dr. Shah's opinion.

2. <u>Dr. Fernando</u>

As to Dr. Fernando, the ALJ stated:

> On April 3, 2015, the claimant attended a consultative examination performed by Dr. Christine E. Fernando. The doctor noted that the claimant reported a history of COPD and had a nodule in his lung. He had a diagnosis of granulomatous disease, most likely, Sardoidosis. He complained of low back pain. Upon exam, he had decreased breath sounds bilaterally and prolonged expiratory phase. He reported that he stopped smoking 4 years past after a 28-year history. His neck exam was normal with minimal discomfort going through the range of motion. He had no radicular symptoms or restriction of motion in his neck. He

exhibited balance issues while performing heel stance, toe stance, and tandem gait. He did not require an assistive device. He had good tone, bilaterally, with good active motion. His strength was 5/5 in all extremities. His hips, knees, and ankles were normal with full range of motion. His shoulders, elbows, wrists, and hands were normal with full range of motion. His straight leg raise test was negative both sitting and supine. The claimant exhibited thrush in his mouth, which the doctor attributed to steroid use. He was on Prednisone. He had degenerative disc disease in his cervical spine, but his spine movement seemed normal except for minimal discomfort. He complained of back pain, but had an unremarkable back exam. He complained of swelling in his feet, and that could have been related to his lung problem.

Dr. Fernando assessed him as able to lift or carry 20 pounds occasionally and 10 pounds frequently. He could stand and walk for less than 2 hours in an 8-hour day with frequent breaks. He could sit for 6 hours in an 8-hour day with his feet elevated. He was not restricted in bending, stooping, crouching, or kneeling. He had no restriction in reaching and grasping. He was able to occasionally push and pull with his upper body due to the degenerative arthritis in his cervical spine. He needed to avoid operating heavy machinery and any know allergens (Exhibit 4F).

CAR 22.

The ALJ did not expressly say what weight was assigned to Dr. Fernando's opinions.

Plaintiff appears to argue the ALJ erred by disregarding Dr. Fernando's opinion plaintiff is limited to sedentary work. "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). Plaintiff's argument is unpersuasive because Dr. Fernando opined consistent with an ability to perform light work, not sedentary work as plaintiff suggests. While the ALJ did not expressly indicate the weight he assigned Dr. Fernando's opinion, it is clear he accepted the doctor's opinion plaintiff could work at the light exertional level.

To the extent the ALJ erred by not expressly accepting Dr. Fernando's opinion, any error is harmless because no reasonable ALJ could have reached a different conclusion had the error not occurred. See Stout v. Commissioner of Social Security, 454 F.3d 1050 (9th Cir. 2006); see also Carmickle v. Commissioner, 533 F.3d 1155 (9th Cir. 2008). The conclusion in this case would not be any different if another ALJ explicitly rather than implicitly accepted Dr.

1    Fernando's opinion plaintiff can perform light work.

2         **C.    <u>Credibility</u>**

3         The Commissioner determines whether a disability applicant is credible, and the

4    court defers to the Commissioner's discretion if the Commissioner used the proper process and

5    provided proper reasons.  See <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

6    credibility finding must be supported by specific, cogent reasons.  See <u>Rashad v. Sullivan</u>, 903

7    F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See <u>Lester v. Chater</u>, 81 F.3d

8    821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

9    and what evidence undermines the testimony.  See <u>id.</u>  Moreover, unless there is affirmative

10   evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

11   credible must be "clear and convincing."  See <u>id.</u>; see also <u>Carmickle v. Commissioner</u>, 533 F.3d

12   1155, 1160 (9th Cir. 2008) (citing <u>Lingenfelter v Astrue</u>, 504 F.3d 1028, 1936 (9th Cir. 2007),

13   and <u>Gregor v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)).

14        If there is objective medical evidence of an underlying impairment, the

15   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

16   because they are unsupported by objective medical evidence.  See <u>Bunnell v. Sullivan</u>, 947 F.2d

17   341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in <u>Smolen v. Chater</u>:

18             The claimant need not produce objective medical evidence of the
             [symptom] itself, or the severity thereof.  Nor must the claimant produce
19           objective medical evidence of the causal relationship between the
             medically determinable impairment and the symptom.  By requiring that
20           the medical impairment "could reasonably be expected to produce" pain or
             another symptom, the <u>Cotton</u> test requires only that the causal relationship
21           be a reasonable inference, not a medically proven phenomenon.

22           80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
             <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).
23

24        The Commissioner may, however, consider the nature of the symptoms alleged,

25   including aggravating factors, medication, treatment, and functional restrictions.  See <u>Bunnell</u>,

26   947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

27   claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

28   testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

                                        11

prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. <u>See</u> <u>Smolen</u>, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. <u>See</u> <u>Carmickle</u>, 533 F.3d at 1161 (citing <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. <u>See</u> <u>Fair v. Bowen</u>, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the "... mere fact that a plaintiff has carried out certain daily activities ... does not ...[necessarily] detract from her credibility as to her overall disability." <u>See</u> <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (9th Cir. 2007) (quoting <u>Vertigan v. Heller</u>, 260 F.3d 1044, 1050 (9th Cir. 2001)); <u>see also</u> <u>Howard v. Heckler</u>, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); <u>Fair</u>, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is "...able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." <u>Fair</u>, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005).

/ / /

/ / /

1            1.    The ALJ's Analysis

2           At Step 4, the ALJ evaluated the credibility of plaintiff's statements and testimony

3    to determine his residual functional capacity. <u>See</u> CAR 20-24. The ALJ summarized plaintiff's

4    statements and testimony as follows:

5    > On January 3, 2017, the claimant testified that he is 54 years old and has
6    > an 11th grade education. He stopped working because he got married and
     > moved to California. His wife works and he looks after their 15-month
7    > old son. The claimant stated that he has issues with his back, knees, and
     > feet. He tries to stay off medication. He has constant pain in his back at a
8    > level of 3-4/10. He has been seeing his doctor for 3 months. He is
     > allergic to inhalers. He uses a nebulizer from time to time. Hot humidity
9    > brings on his breathing problems. He is only able to sit for 20 minutes,
     > then he has to stand up. He sits in a chair with his feet on an ottoman. He
10   > can only play with his son for 15 to 20 minutes. He can only lift his son
     > for 15 to 20 minutes. The claimant stated that he has been diagnosed with
11   > depression because he cannot take care of himself. Sometimes he sits and
     > cries because he cannot do anything. He was unable to do a landscaper
12   > job because he could not use a weed eater or lawn mower (Testimony).

13   > <u>Id.</u> at 20.

14   In finding plaintiff's statements and testimony not fully credible, the ALJ stated:

15   > The medical evidence of record from his alleged onset date of September
     > 1, 2012 through the DLI of December 31,2014 does not establish that
16   > the claimant was physically disabled. He testified that he *currently* tries
     > to stay off medication for issues with his back, knees, and feet. He has
17   > been seeing his doctor for 3 months (Testimony).

18   > The claimant's Kaiser record documents that he was a new member on
     > November 12, 2012. He was in treatment for chronic low back pain, and
19   > was in remission from tobacco abuse (Exhibit 1F/6).

20   > He reported starting with symptoms of breathing problems with work
     > (landscaping and construction) around March and April of 2013 (Exhibit
21   > 2F/47).

22   > The next record was on May 18, 2013, and shows he called into Kaiser
     > Call Center Advice Nurse. There was no message in this contact (Exhibit
23   > 1F/11).

24   > On June 6, 2013, he called the Kaiser Advice Nurse with complaints of
     > intermittent swelling and redness in his feet for the previous two weeks
25   > (Exhibit 1F/13-17).

26   > On June 11, 2013, he had an office visit for bilateral foot swelling and
     > left big toe with sharp pain. He denied chest pains, shortness of breath, or
27   > coughing. He had a skin graft on his left foot due to injury from using a
     > metal weed eater. There was no active medication on file and he had a
28   > negative systems review. His extremities showed moderately prominent

superficial varicosities with trace pretibial edema. He had a normal EKG. His chest x-ray showed no acute cardiopulmonary abnormality. There was an ill-defined left lower lobe opacity with associated adjacent linear stranding. He was to adjust his salt intake and use support stockings for his varicose veins (Exhibit 1F/18-28).

On June 18, 2013, Dr. Archan M. Shah, noted that the claimant was restricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature (e.g., light housework, office work). The claimant was not taking any medication. His record showed that he had no known allergies. His PET scan showed faint uptake 1.1 and 1.4 in the 2 LLL nodules. The probability of malignancy was about 12% (Exhibits 1F/39-51, 2F/12).

On June 19, 2013, the claimant repotted no swelling of his legs or feet. He reported episodes of one or both arms feeling numb in certain positions. X-rays of his cervical spine showed bilateral foraminal narrowing at C5-6. Results of a spirometry showed moderate airflow obstruction. There was no bronchodilator challenge given (Exhibits 1F/56-62, 2F/18).

On June 24, 2013, his PET scan showed two pulmonary nodule within the left lower lobe of his lung suggestive of a benign rather than a malignant etiology. The claimant was advised that there was no need for a biopsy (Exhibit 1F/71-79).

On June 29, 2013, he was diagnosed with COPD, stage 1, mild (FEV1 80-100% (Exhibit 2F/48). On October 9, 2013, he was treated in a Kaiser ER for a cough and wheezing. His chest x-ray showed a 2.7 cm mass in the left lower lobe that had increased in size (Exhibit 1F/94-105).

On January 9, 2014, he carried a diagnosis of COPD stage 1, mild, with FEV1 of 80% to 100% (Exhibit 1F/130, 2F/54).

On January 22, 2014, he complained of dyspnea on exertion. His EKG was normal without ischemic changes and few risk factors for CAD so no cardiac stress testing was necessary (Exhibit 2F/48).

On January 27, 2014, he underwent thoracoscopic surgery with lower lobe wedge resection (Exhibit 1F/200-383, 2F/50).

On February 19, 2014, his chest x-ray showed continued interstitial and patchy densities in the left lower lobe, decreased from the prior exam. He also had emphysematous changes at lung apices. Prior opacities at the right lung base had also decreased (Exhibits 1F/387, 2F/63).

In April of 2014, his record indicated that he was intolerant of his inhalers. They caused blisters and dry mouth. He had discontinued use of both inhalers (Exhibits 1F/392-394, 2F/66).

On May 2, 2014, the claimant reported that his oral thrush had resolved. He got shortness of breath with exertion. He reported feeling pretty good and did not want to start any steroids (Exhibit 1F/400).

/ / /

14

I note that pursuant to 20 CFR 404.970(6), medical records created after the DLI are immaterial to this decision. However, based upon the timing of this claim and initial processing by the State agency, the claimant was asked to attend consultative examinations after the DLI.

On April 3, 2015, the claimant attended a consultative examination performed by Dr. Christine E. Fernando. The doctor noted that the claimant reported a history of COPD and had a nodule in his lung. He had a diagnosis of granulomatous disease, most likely, Sardoidosis. He complained of low back pain. Upon exam, he had decreased breath sounds bilaterally and prolonged expiratory phase. He reported that he stopped smoking 4 years past after a 28-year history. His neck exam was normal with minimal discomfort going through the range of motion. He had no radicular symptoms or restriction of motion in his neck. He exhibited balance issues while performing heel stance, toe stance, and tandem gait. He did not require an assistive device. He had good tone, bilaterally, with good active motion. His strength was 5/5 in all extremities. His hips, knees, and ankles were normal with full range of motion. His shoulders, elbows, wrists, and hands were normal with full range of motion. His straight leg raise test was negative both sitting and supine. The claimant exhibited thrush in his mouth, which the doctor attributed to steroid use. He was on Prednisone. He had degenerative disc disease in his cervical spine, but his spine movement seemed normal except for minimal discomfort. He complained of back pain, but had an unremarkable back exam. He complained of swelling in his feet, and that could have been related to his lung problem.

Dr. Fernando assessed him as able to lift or carry 20 pounds occasionally and 10 pounds frequently. He could stand and walk for less than 2 hours in an 8-hour day with frequent breaks. He could sit for 6 hours in an 8-hour day with his feet elevated. He was not restricted in bending, stooping, crouching, or kneeling. He had no restriction in reaching and grasping. He was able to occasionally push and pull with his upper body due to the degenerative arthritis in his cervical spine. He needed to avoid operating heavy machinery and any know allergens (Exhibit 4F).

On May 18, 2015, State agency medical consultant, Dr. H. Jone, initially determined that there was insufficient medical evidence to establish disability through the DLI. Dr. Jone did consider Dr. Fernando's exam (Exhibit 1A/10).

At the reconsideration on August 3, 2015, State agency consultant, Dr. M. Bayar, determined that the claimant could still perform medium exertion. He could occasionally lift and/or carry, push, and pull 50 pounds and 25 pounds frequently. He could stand and/or walk for about 6 hours in an 8-hour workday. He could sit for 5 hours of an 8-hour workday. He could frequently climb ropes and stairs, stoop, kneel, and crouch. He could occasionally climb ladders, ropes, and scaffolds. He could occasionally crawl. He had no manipulative, visual, or communicative limitations. He needed to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. Dr. Bayar noted that Dr. Fernando's medical source statement was not supported by the claimant's normal physical findings. Dr. Bayar noted that there was inconsistency in the claimant's effort PFT, and that invalidated the test (Exhibit 3A/10-12).

Based upon the foregoing medical history, I find the claimant was capable of performing light exertional activity with environmental limitation through his DLI.

In terms of the claimant's alleged impairments, the claimant testified that he stopped working because he got married and moved to California (Testimony). He did not stop working because of his alleged impairments.

While he alleged being disabled as of September 1, 2012, he did not file his claim for disability until September of 2014. This delayed filing does not support his allegations of disabling impairments when he waited two years to file this claim. Ironically, he filed this claim shortly before his DLI of December 31, 2014. The medical evidence of record does not establish disability through that date.

While he alleged disability as of September 1, 2012, the first medical evidence of impairment in his left lung did not occur until June 11, 2013, with his abnormal chest x-ray (Exhibit 1F/18-28). He reported starting with symptoms of breathing problems with work (landscaping and construction) around March and April of 2013 (Exhibit 2F/47). However, there is no evidence of work up or treatment for breathing problems until June of 2013. Even so, on June 18, 2013, Dr. Archan M. Shah, noted that the claimant was restricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature (e.g., light housework, office work) (Exhibits 1F/39, 2F/12).

The claimant alleges disabling pain, however, on June 18, 2013, Dr. Shah, noted that he was not taking any medication (Exhibits 1F/39-51, 2F/12). While it was well after the DLI, in January of 2017, he testified that he tries to stay off medication (Testimony).

He did not provide persuasive testimony about his alleged impairments. He alleges disabling impairments, however, he testified that he provides daily care for his 15-month old son (Testimony). As his wife works, he has been providing care for his son since his son's birth. This negates his further testimony that he has been diagnosed with depression because he is unable to care for himself. Sometimes he sits and cries because he cannot do anything (Testimony). Nevertheless, the claimant's testimony about his current functioning does not support his allegation that he was disabled through his DLI.

While he alleges depression, consultative examiner, Dr. Lacy, reported a normal mental status exam, and that was after his DLI (Exhibit 7F). State agency consultant, Dr. Bilik determined that he did not have a severe mental impairment through his DLI (Exhibit 1A/11).

Although the claimant clearly has breathing issues now, he must establish disabling breathing issues through his DLI. He underwent a lobectomy before his DLI, however his COPD was assessed as mild at that time (Exhibit 2F/48, 54). He left his last job due to relocation and not due to any alleged impairment. Further, in June of 2013, Dr. Shah noted that he could still perform light housework or office work (Exhibit 1F/39). He

/ / /

could have worked in a light office environment such as those provided by the vocational expert response to hypothetical 2 (See: below).

CAR 20-24.

2.     Plaintiff's Contentions

According to plaintiff:

The ALJ may not discount the claimant's testimony regarding the severity of the symptoms without making "specific, cogent" findings, supported in the record, to justify discounting such testimony. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Smolen v. Chater*, 80 F.3d 1273, 1282-84 (9th Cir. 1996)3 ; An ALJ must take into account a claimant's symptom testimony when determining the RFC. *Laborin v. Berryhill,* 867 F.3d 1151, 1154 (9th Cir. 2017); *Trevizo v. Berryhill*, 862 F.3d 987, 1000 n.6 (9th Cir. 2017).

Here the ALJ gave the following reasons to discredit Stevens; (1) Stevens stopped working because he moved to California not because he was disabled. (AR 23), (2) Stevens said his onset date was nine months before his doctors found the obstruction in his lung, (3) Stevens did not take his medication. All three of these findings are not supported by the record, (4) Stevens took care of his child. . . .

Here re; (1) the ALJ makes a distinction between an applicant being disabled at work and being off work and finding themselves disabled. The ALJ states that Stevens quit his job and was therefore not disabled. However, Stevens worked until the end of 2012. He came to Calforia [sic] at the end of 2012 when he got married he enrolled in Kaiser at the end of 2012. (AR 36). Stevens stated he tried to work; "lay some sod here awhile back while I was here in California for a friend of mine, and no I laid three or four pieces of it, and I'd have to stop and rest. And I used to [sic] pallets at a time. But's that's it. (AR 46)(AR 177). As such, the ALJ made a factual error. Therefore the ALJ's finding is not supported by substantial evidence.

Here re; (2) The ALJ finds Stevens testimony not credible because there was a nine-month from the time Stevens states he had trouble breathing and the abnormal chest x-ray. The ALJ's logic is unclear. Stevens started at Kaiser at the end of 2012 (AR 177). Kaiser evaluated him throughout 2013-2014. The fact that Stevens had an abnormal x-ray would establish reasons for his trouble breathing. As such, the ALJ's finding is not supported by law or evidence. Therefore the ALJ's finding is not supported by clear and convincing reasons supported by substantial evidence.

Here re; (3) The ALJ finds that Stevens' was not in pain because he was not taking medication. On June 18, 2013, Dr. Shah noted. [sic] The claimant alleges disabling pain, however, on June 18, 2013, Dr. Shah noted that he was not taking any medication. While it was well after the DLI, in January 2017, he testified that he tries to stay off medication (Testimony). However, the [sic] Stevens was allergic to the medications and was taking prednisone. His testimony that he was unable to breathe and then received a x-ray which found the reason for his impairment is not evidence that his impairment began at the time of the x-ray. As such, the

ALJ's finding is not based on medical evidence. Therefore the ALJ's finding is not supported by clear and convincing reasons supported by substantial evidence.

The Pulmonary Team documents Stevens has attempted to take several treatments for his concurrent lung disease but has had adverse reactions to all of them. (AR 860-1) (AR 865). Dr. Archan, MD writes since the lobectomy, Stevens is unable to use Spiriva and QVAR inhalers because he developed blisters and dryness in the mouth (AR 731, 732). Dr. Waterburry noted in 2016 Stevens' intolerance of inhaled steroid is a "hard nut to crack"(AR 887).

ALJ:   Do you use an inhaler? Nebulizer? Breathing machine?

Stevens:   Very irregular, because so far everything that I've been diagnosed or been prescribed, excuse me, I've had severe allergic reaction to. There's some steroid that's common in most all inhalers that I've been allergic to. (AR 40).

Stevens has taken a variety of medications and has adverse reactions. His wife in the third party statement states; his breathing has gotten worse since his surgery. His feet stay swollen and he has more problems with is stomach with severe cramping and pain. When he tries basic household chores he has spasms which have in bed for 1-3 days. [sic] reports that after his operation his condition has gotten worse because of his adverse reactions. His legs swell, he has lesions on his body (AR 885.) As such, Stevens has taken medication and has been unable to continue the medication because of the poor reaction.

Here re; (4) Though inconsistent daily activities may provide a justification for rejecting symptom testimony, "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." Disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). (footnote omitted). The ALJ states Stevens has been taking care of his son since birth. Stevens explained that he is limited to the care of his sons. The Pulmonary Medicine team states; he complaints of difficulty caring for his child because of exertional dyspnea and chronic cough (AR 860).

ALJ   So, Dr. Bellucci noted that you would have to elevate your legs. You just testified you do that. How often or how long during the daytime?

A   Probably throughout the day they're probably elevated five hours out of the -- out of a normal eight-hour day so-to-speak.

Q   I guess the best example is you're taking care of your child, how long can you do something, whether it's diaper, whether it's just playing with him, whether it's just watching him I guess?

A   Watching him I can basically do that until he does something that I need to go, but as far as -- 15, 20 minutes is tops. I get down to play with him, and I wind up I can't do that no more. It hurts me mentally I guess is

18

| | |
|---|---|
| 1 | what I'm trying to say. I can't play with my own son without having to -- it hurts. |
| 2 | Q  I understand.<br>A  It just |
| 3 | Q  He's 15 months old. How much does he weigh? Do you know? |
| 4 | A  42 pounds last time he was weighed.<br>Q  Can you lift him? |
| 5 | A  For about ten minutes. |

Here Stevens is limited by his inability to breathe. He is not able to lift weight and because of his depression. The level of activity he reports is consistent with the limitations both the Consulting Examiners; As such, the ALJ's finding is not based on medical evidence. Therefore the ALJ's finding is not supported by clear and convincing reasons supported by substantial evidence.

Therefore the ALJ failed to provide "specific, clear and convincing reasons" for rejecting Stevens' testimony concerning the severity of his symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281, 1284 (9th Cir. 1996) (discussing factors to consider in evaluating credibility). The ALJ did not link the testimony to particular parts of the record supporting the adverse credibility determination as required in *Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015). As such (1), (2), (3), and (4) are factually incorrect. Therefore the ALJ has not provided any reasons to discredit Stevens' statements.

3.    <u>Disposition</u>

In this case, the ALJ provided several reasons for rejecting plaintiff's statements and testimony as to disabling symptoms as not credible, any one of which are legally sufficient if supported by substantial evidence.  Because the court finds the ALJ's reasons to be supported by substantial evidence, plaintiff's arguments challenging the ALJ's adverse credibility finding ae unpersuasive.

In discounting plaintiff's credibility, the ALJ noted plaintiff's unexplained lack of treatment as well as benign objective findings between the date plaintiff alleges he became disabled (September 1, 2012) and the date last insured (December 31, 2014).  Specifically, plaintiff alleged disability beginning in September 2012, but the ALJ noted the medical records throughout the remainder of 2012 as well as for 2013 and 2014 showed no significant objective findings relating to plaintiff's allegedly disabling symptoms.  <u>See</u> CAR 20-22.  Notably, though plaintiff alleges he became disabled in September 2012, he did not receive surgery until January 2014 – more than a year <u>after</u> plaintiff states he was no longer able to work due to disabling symptoms.  Moreover, a month following this surgery, chest x-rays revealed decreased densities

and opacities in plaintiff's lung. In May 2014, plaintiff reported feeling pretty good and refused steroids. Contrary to plaintiff's assertion that "[t] ALJ's logic is unclear," the court finds the logic to be quite clear – plaintiff's statements and testimony of disabling symptoms are undermined by an unexplained lack of treatment as well as documented objective findings from the alleged onset date through the date last insured. See Bunnell, 947 F.2d at 345-47; Smolen, 80 F.3d at 1284.

The ALJ also noted inconsistent statements from plaintiff as to why he stopped working in September 2012. Specifically, as the ALJ observed, plaintiff claims an inability to work due to disabling symptoms, but plaintiff testified at the hearing he stopped working in September 2012 because he got married and moved to California, not due to disabling symptoms. See CAR 23. The ALJ properly relied on this inconsistent testimony. See Bunnell, 947 F.2d at 345-47; Smolen, 80 F.3d at 1284. Plaintiff contention he was unable to work once he arrived in California due to disabling symptoms, that fact does not undermine the ALJ's finding regarding the reason plaintiff said he stopped working in the first place – a re-location to another state.

Finally, the ALJ properly cited plaintiff's ability to care for his infant son. As indicated above, the ALJ may rely on daily activities which are inconsistent with allegations of total disability where such activities reflect an ability to perform sustained work-related activities. According to plaintiff, his ability to care for his child is limited in that he gets too tired after 15 to 20 minutes. This allegation, set forth in plaintiff's hearing testimony, is belied by evidence his wife works and, as such, plaintiff must be providing more sustained care than he admits.

### D. **Lay Witness Evidence**

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

When rejecting third party statements which are similar in nature to the statements of plaintiff, the ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

Plaintiff argues:

> Karen Stevens provided evidence as a thirty [sic] party. (AR 198). The ALJ failed to address this important evidence. Mrs. Stevens gave evidence as to the onset date (after surgery), the effects of his daily living (spasms in his back) and the difficulty he has because of pain. As the ALJ did not address her report the ALJ committed legal error. Therefore the ALJ's finding is not supported by substantial evidence.

Defendant concedes error and argues it is harmless. The court agrees.

The Ninth Circuit has applied harmless error analysis in social security cases in a number of contexts. For example, in Stout v. Commissioner of Social Security, 454 F.3d 1050 (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Id. at 1056; see also Robbins v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at 1056). Similarly, in Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004), the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's testimony. Specifically, the court held:

> However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied there was substantial evidence supporting the ALJ's decision. Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.

> Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).

/ / /

/ / /

In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the claimant's age and education. The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion. See Widmark v. Barnhart, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

The harmless error standard was applied in Carmickle v. Commissioner, 533 F.3d 1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility. Citing Batson, the court stated: "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error." See id. at 1162. The court articulated the difference between harmless error standards set forth in Stout and Batson as follows:

> . . . [T]he relevant inquiry [under the Batson standard] is not whether the ALJ would have made a different decision absent any error. . . it is whether the ALJ's decision remains legally valid, despite such error. In Batson, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasons *and ultimate credibility determination* were adequately supported by substantial evidence in the record. We never considered what the ALJ would do if directed to reassess credibility on remand – we focused on whether the error impacted the *validity* of the ALJ's decision. Likewise, in Stout, after surveying our precedent applying harmless error on social security cases, we concluded that "in each case, the ALJ's error . . . was inconsequential to the *ultimate nondisability determination*."

> Our specific holding in Stout does require the court to consider whether the ALJ would have made a different decision, but significantly, in that case the ALJ failed to provide *any reasons* for rejecting the evidence at issue. There was simply nothing in the record for the court to review to determine whether the ALJ's decision was adequately supported.

> Carmickle, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

Thus, where the ALJ's errs in not providing any reasons supporting a particular determination (i.e., by failing to consider lay witness testimony), the Stout standard applies and the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred. Otherwise, where the ALJ provides analysis but some part of that analysis is flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either legally insufficient or unsupported by the record), the Batson standard applies and any error is

22

harmless if it is inconsequential to the ultimate decision because the ALJ's disability

determination nonetheless remains valid.

Mrs. Stevens' third-party function report is contained in the record at Exhibit 4E. See CAR 198-206. As defendant notes, Mrs. Stevens' report is the same as plaintiff's. Compare CAR 198-206 (Mrs. Stevens' report dated March 22, 2015, at Exhibit 4E) and CAR 189-187 (plaintiff's report dated March 22, 2015, at exhibit 3E). Plaintiff does not contend otherwise. Because any reasonable ALJ would have properly rejected Mrs. Stevens' statement for the same reasons the ALJ cited for rejecting plaintiff's statements and testimony as not credible, see Valentine, 574 F.3d at 694, any error is harmless, see Stout, 454 F.3d 1050; see also Carmickle, 533 F.3d 1155.

### E. Mental Impairments and Obesity

Plaintiff asserts the ALJ erred by failing to consider the combined effect of his impairments, including mental impairments and obesity. Generally, plaintiff states:

> 20 C.F.R. § 404.1529 requires (A) non-exertional and exertional limitations be addressed in combination and (B) exertional limitations be addressed as to residual functional capacity. Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985), and Estran v. Heckler, 745 F.2d 340 (5th Circ. 1984), stated that "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education, or work experience."
> The ALJ is required Combination of impairments [sic] Lester v. Chater, 81 F. 3d 821 (9th Cir. 1995). 20 C.F.R. § 404.1520(d) states the claimant's illnesses "must be considered in combination and must not be fragmentized in evaluating their effects." Beecher v. Heckler, 756 F.2d 693, 694-95 (9th Cir.1985) (quoting Dressel v. Califano, 558 F.2d 504, 508 (8th Cir.1977). In determining whether the claimant's combination of impairments equals a particular listing, the Commissioner must consider whether his "symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria." 20 C.F.R. § 404.1529(d)(3). 20 C.F.R. § 404.1529(d) mandates the ALJ discuss the effect of (A) the combination of both mental and (B) physical limitations together. (footnote omitted).

/ / /

/ / /

/ / /

/ / /

1    1.    Mental Impairments

2    According to plaintiff:

3        Here re; (A) Congress passed the Adult Disabilities Act, August
      28, 19856 (50 FR35038). The ALJ must provide specific protections for
4     the evaluation of mental impairments. Where there is a colorable claim of
      mental illness, the ALJ must apply the special technique. The ALJ must
5     apply the mental limitations to the residual functional capacity
      evaluation. The ALJ must use medical authority. The ninth circuit
6     emphasizes the application of the technique is not optional. *Keyser v.
      Comm'r of Soc. Sec. Admin.*,648 F.3d 721, 726 (9th Cir. 2011).
7        Here the ALJ finds that Stevens does not have a severe mental
      impairment because he has not received treatment before the date of last
8     insured December 2014. The ALJ disregarded the State's Psychological
      Consultant Dr. Lacy who finds Stevens is severely depressed and has
9     been for the previous four years (AR 816). The ALJ disregards Licensed
      Counselor Nelson [sic] Stevens has episodes of deterioration or
10    decompensation (AR 944). Most recent episodes were on 11/26/2016
      where he caused car accident due to anger and irritability related to
11    bipolar disorder (AR 944). Nelson diagnoses Stevens with bipolar
      disorder and PTSD (AR 942). Evidence must be viewed globally. As
12    such, the ALJ did not properly address Stevens' mental impairment. As
      such (A) and (B) were not met. Therefore the ALJ did not address the
13    combination of impairments as required by 20 C.F.R. § 404.1529(d)(3).

14   Plaintiff's argument is unpersuasive because he relies on evidence relating to his mental condition

15   *after* the alleged onset date.  Such evidence is immaterial to the time period at issue.  See 20

16   C.F.R. § 404.970(6).

17    2.    Obesity

18    Plaintiff contends:

19        SSR 02-1p requires the ALJ to address a claimant's obesity as to
      possible limitations in residual functioning. In 2012 [plaintiff] weighted
20    [sic] 254 at 6'7 with a BMI of 28.61 (AR 270). In January of 2014 he
      weighed 284 and his BMI shot to 31.98(AR 415). In 2016 Stevens weight
21    jumped to 324 lbs (BMI of 37.5) which SSR 02-1 titles extreme obesity.
      SSR 02-1 finds obesity correlated with mental health and fatigue. (AR
22    864). Stevens lack of mobility, pain and spasms and swelling in his feet
      entwined with his obesity are products of his physical impairment. These
23    limitations were not addressed by the ALJ. As such the ALJ committed
      legal error not addressing obesity as a limitation as required by SSR 02-
24    1p. Therefore the ALJ's finding is not supported by substantial evidence.

25   ///

26   ///

27   ///

28   ///

24

In 1999, obesity was removed from the Listing of Impairments.[4]   Obesity may still enter into a multiple impairment analysis, but "only by dint of its impact upon the claimant's musculoskeletal, respiratory, or cardiovascular system." Celaya v. Halter, 332 F.3d 1177, 1181 n.1 (9th Cir. 2003).  Thus, as part of his duty to develop the record, the ALJ is required to consider obesity in a multiple impairment analysis, but only where it is "clear from the record that [the plaintiff's] obesity . . . could exacerbate her reported illnesses." Id. at 1182; see also Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (distinguishing Celaya and concluding that a multiple impairment analysis is not required where "the medical record is silent as to whether and how claimant's obesity might have exacerbated her condition" and "the claimant did not present any testimony or other evidence . . . that her obesity impaired her ability to work").  Where a multiple impairment analysis is not required, the ALJ properly considers obesity by acknowledging the plaintiff's weight in making determinations throughout the sequential analysis.  See Burch, 400 F.3d at 684.

In this case, the court finds a multiple impairment analysis was not required with respect to plaintiff's obesity because plaintiff never claimed obesity impaired his ability to work. See id.  Nonetheless, the ALJ erred by failing to acknowledge plaintiff's weight at any point in the hearing decision.  See id.  Because the hearing decision does not reflect the ALJ even knew plaintiffs was obese, the court cannot say the error was harmless.  It is quite possible another ALJ, recognizing plaintiff's obesity, may reach a different conclusion.  Stout, 454 F.3d at 1056.  The matter will be remanded to allow the Commissioner to make specific references and/or findings as appropriate regarding plaintiff's weight.

/ / /

/ / /

/ / /

/ / /

---

[4]     Under SSR 02-01p, a person with body mass index (BMI) of 30 or above is considered obese.  BMI is the ratio of an individual's weight in kilograms to the square of height in meters (weight divided by square of height).

## F.    Vocational Finding

The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity.  The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[5]  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional

---

[5]        Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20 C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§ 404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§ 404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20 C.F.R. §§ 404.1567(e) and 416.967(e).  Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

At Step 5, the ALJ concluded plaintiff could through the date last insured perform work that existed in significant numbers in the national economy.  The ALJ stated:

> In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.  If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14).  If the claimant has solely nonexertional limitations, section

204.00 in the Medical-Vocational Guidelines provides a framework for decision making (SSR 85-15).

Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.11. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, I asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as

- Office Helper (DOT 239.567-010) with an SVP of 2 (unskilled) and light exertion. There are 112,000 such positions in the nation.

- Information Clerk (DOT 237.367-018) with an SVP of 2 and light exertion. There are 83,000 such positions in the national economy.

- Mail Room Clerk (DOT 209.687-026) with an SVP of 2 and light exertion. There are 68,000 such positions in the national economy.

Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, I conclude that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

CAR 25-26.

According to plaintiff, the ALJ erred because, for the reasons argued elsewhere, the record does not support the ability to perform light work. As to the specific jobs identified by the vocational expert, plaintiff asserts:

Social Security Ruling 82-41 Where transferability is at issue, (1) the same or a lesser degree of skill is required, because people are not expected to do more complex jobs than they have actually performed (i.e, from a skilled to a semiskilled or another skilled job, or from one semiskilled to another semiskilled job). . . . [¶] Stevens has never worked in an office. His jobs were unskilled. Under the medical-vocational rules he is not required to retrain. As Stevens was 51 at the time of his onset. He

was approaching advanced age. He is disabled as he has a 10th-grade education and has worked primarily physical jobs. He has no direct transferable skills. In order to have directly transferable skills, he would have to have worked in the field recently and be able to immediately use those skills. In the last 10 years, office skills require the use of a computer and the ability to work with other technical machines. As such, Stevens' [sic] does not have the prerequisites to work any of the jobs the ALJ has listed. Therefore the ALJ has not met his burden of proof at Step five.

As discussed above, the matter will be remanded in light of the ALJ's failure to reference plaintiff's obesity in the hearing decision. The court therefore declines to express an opinion on the current vocational findings as they are rendered moot on remand.

## IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion for summary judgment (Doc. 12) is granted;

2.      Defendant's motion for summary judgment (Doc. 22) is denied;

3.      The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and

4.      The Clerk of the Court is directed to enter judgment and close this file.

Dated:  March 28, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE